IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAQUEL ESTELA PEAR,   Case No. 6:15-cv-01451-TC

   Plaintiff,   OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

   Defendant.

COFFIN, Magistrate Judge:

Plaintiff Raquel Pear seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgments in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

BACKGROUND

On October 10, 2006, plaintiff filed an application for DIB alleging a disability beginning February 22, 2006. Tr. 30. After her claim was denied initially on February 7, 2007, and again

1 – OPINION AND ORDER

upon reconsideration on October 4, 2007, plaintiff filed a request for a hearing on November 7, 2007. *Id.* Plaintiff appeared with her attorney and testified at a hearing on November 5, 2009, before administrative law judge (ALJ) Catherine Lazuran. Tr. 97. On December 17, 2009, ALJ Lazuran issued a written decision finding plaintiff not disabled from February 22, 2006, through the date of her decision. Tr. 30. Plaintiff appealed ALJ Lazuran's decision to the Appeals Council, which denied her request for review. *Id.* Consequently, ALJ Lazuran's decision became the final decision of the Agency. *Id.*

Plaintiff, who was insured under Title II through September 30, 2012, protectively filed a new application for DIB and SSI on June 30, 2011, alleging disability beginning December 18, 2009, the day after ALJ Lazuran issued her unfavorable decision. Tr. 10, 30, 94-106, 278, 318. Following a denial of benefits, plaintiff requested a hearing before an ALJ. On October 8, 2013, plaintiff appeared with her attorney and testified at a hearing before ALJ Dan Hyatt. Tr. 30. A vocational expert (VE) was also present at the hearing but did not testify. *Id.*

On January 13, 2014, ALJ Hyatt issued a written decision finding that *res judicata* applied to the adjudicated period of ALJ Lazuran's prior decision and that *res judicata*, "also created a presumption of continuing non-disability for any period after that date absent proof of changed circumstances indicating a greater disability." *Id.* (citing *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988)). ALJ Hyatt concluded that plaintiff failed to meet her burden of showing changed circumstances to overcome the presumption of continuing non-disability from December 18, 2009, through the date of his decision and, therefore, found plaintiff not disabled. *Id.* at 31. Plaintiff appealed ALJ Hyatt's decision to the Appeals Council, which denied her request for review on June 4, 2015, making ALJ Hyatt's decision the final decision of the Agency. Tr. 1-3. This appeal followed.

2 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, a reviewing court must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Further, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Finally, an unappealed denial of an application for disability benefits operates as *res judicata* with respect to the finding of non-disability through the date of the prior decision. *Chavez*, 844 F.2d at 693; *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). The binding determination of non-disability also creates a presumption of continuing non-disability with

3 – OPINION AND ORDER

respect to the period after the date of the prior decision. *Lester,* 81 F.3d at 827. The presumption may be overcome by new facts establishing a previously unlitigated impairment, other apparent error in the prior determination, or where the claimant's unrepresented status has resulted in an inadequate record. *Id.* at 827-28.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her subjective symptom statements not credible; (2) finding lay witness statements not credible; (3) finding her not disabled at step four; and (4) relying on vocational expert (VE) testimony that was based on a hypothetical question posed to the VE that did not contain all her limitations supported by the record. Pl.'s Br. 5-16.

## I. **Plaintiff's Credibility**

ALJ Hyatt found plaintiff "not entirely credible" because despite claiming that her pain and anxiety symptoms had materially worsened after being found not disabled in 2009, her treatment since that time had been "very conservative," "suggest[ing] that her pain has not materially worsened since that time." Tr. 37. Specifically, ALJ Hyatt noted that plaintiff treated her pain with ibuprofen and Relafen, engaged in minimal chiropractic treatment, and treated her anxiety in the same way she had prior to 2009 and has sought no mental health treatment since 2009. *Id.* Finally, ALJ Hyatt noted that plaintiff's friend, Estela Balanzen's, reported that plaintiff's "illness was physical [and] not mental," and that this testimony directly contradicted plaintiff's statements at the hearing that she has problems with anxiety that have materially worsened since 2009. *Id.*

Plaintiff argues that ALJ Hyatt erred by failing to state specific, clear, and convincing reasons for finding her subjective symptom testimony not credible. Pl.'s Br. 11. Specifically, plaintiff argues that because her "conservative treatment" was "a direct result of her poverty and

lack of medical insurance" and because she did not want to take higher doses of pain medication due to negative side effects, ALJ Hyatt erred by finding her statements not credible due to her conservative treatment. Pl.'s Br. 12.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. However, the claimant cannot be denied benefits for failing to obtain treatment that would ameliorate her condition if she cannot afford that treatment. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Also, "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The ALJ may consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Smolen*,

5 – OPINION AND ORDER

80 F.3d at 1284. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Here, ALJ Hyatt found plaintiff's subjective symptom statements not credible because: (1) she claimed to have experienced material worsening of her alleged pain and anxiety symptoms, but sought only conservative treatment for her symptoms; and (2) her statements regarding her anxiety symptoms were contradicted by the lay testimony of Ms. Balanzen. As to ALJ Hyatt's first reason for rejecting plaintiff's statements, The record is replete with plaintiff's assertions that she could not afford additional treatment to ameliorate her conditions, tr. 16, 66, 80, that she would seek such treatment if and when she obtained medical insurance, tr. 388, and that she does not take other pain medication due to adverse side effects. Tr. 62-63. Accordingly, on this record, plaintiff's minimal treatment regime was not a clear and convincing reason for ALJ Hyatt to discredit her symptom testimony. *Carmickle,* 533 F.3d at 1162.

As to ALJ Hyatt's second reason for rejecting plaintiff's statements, the record reveals that contrary to plaintiff's assertions that she has experienced material worsening "primarily with anxiety" since 2009; tr. 89, 348-82; Ms. Balanzen, plaintiff's friend for 30 years, opined that plaintiff is "sharp minded," handles stress "just like any normal person would," and that her "illness is not mental." Tr. 310-16 (emphasis in original). While variable interpretations of this evidence may exist, ALJ Hyatt's analysis was nonetheless reasonable, such that it must be upheld. *See Batson*, 359 F.3d at 1198. In sum, this was clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. *Smolen*, 80 F.3d at 1284.

Because one of the two reasons ALJ Hyatt provided in support of his adverse credibility finding was invalid, the court must determine whether his reliance on that reason was harmless error. *See Batson.,* 359 F.3d at 1195–97 (applying harmless error standard where one of the ALJ's reasons supporting an adverse credibility finding was held invalid). "So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Carmickle,* 533 F.3d at 1162 (quoting *Batson.,* 359 F.3d at 1197). In this case, ALJ Hyatt's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record. As such, his decision finding plaintiff less than fully credible is valid, despite the errors identified above. Accordingly, ALJ Hyatt's credibility finding is affirmed.

## II. Lay Witness Credibility

Plaintiff argues that ALJ Hyatt erred by failing to provide specific and legitimate reasons for rejecting the lay testimony of her friend Estela Balanzen. Pl.'s Br. 15; Pl.'s Reply Br. 5.

Ms. Balanzen completed a third party function report on August 23, 2011, where she noted that she has known plaintiff for 30 years and visits her once per month. Tr. 310. Ms. Balanzen nevertheless answered 19 of questions on the report by writing "I don't know," "not sure," or "I don't live with her." Tr. 311-16. These questions asked: what plaintiff does from the time she wakes up until the time she goes to bed; whether she is able to manage her personal care; how often she prepares meals and if so, how long it takes her to do so; how often she goes outside; whether she shops and if she does, how long it takes her to do so; how often she engages in hobbies; whether she engages in social activities with others; how far she can walk without needing to stop and rest; how well she follows written instructions; whether she has been fired or

7 – OPINION AND ORDER

laid off because of problems getting along with others; and whether she takes any medications and if she does, whether they cause negative side effects. *Id.*

Of the questions Ms. Balanzen was able to answer, she reported that plaintiff drives a car, manages her money, handles changes in routine "normal" and "just like the rest of people," handles stress "just like any normal person would," is "sharp minded – memory is good," is a "great listener [and] is a nice likeable person," "looks clean, I assume she does [take care of personal care and grooming]," "her illness is not mental – she is physically impair[ed] – in pain," used to prepare all her meals and now prepares frozen food because "she has too many bad days," does not do house or yard work, does not care for anyone else, and "she tells me that she is not able to sleep at night – due to back pain and having to get up to use the toilet." *Id.* (emphasis in original).

Finally, in a check the box portion of the report, Ms. Balanzen checked boxes indicating that plaintiff's alleged impairments affect her ability to lift, bend, stand, reach, walk, and kneel, but do not affect her ability to squat, sit, talk, climb stairs, concentrate, or complete tasks. Tr. 315. When asked to describe how plaintiff's alleged conditions affect each of the limitations she endorsed, Ms. Balanzen wrote "I am not a doctor. I don't see her lifting, so I don't know." *Id.*

ALJ Hyatt discussed Ms. Balanzen's functional report and noted that she opined that plaintiff's illness was physical and not mental and that plaintiff told her that she has difficulty sleeping due to back pain and needing to use the restroom frequently. Tr. 36. ALJ Hyatt gave Ms. Balanzen's lay statements "some weight," but found that the limitations she reported "do not support a conclusion that [plaintiff] is disabled or has limitations greater than those determined in this decision." Tr. 36-37. ALJ Hyatt provided no further reasoning for giving Ms. Balanzen's lay testimony only "some weight."

8 – OPINION AND ORDER

An ALJ must consider the statements of family and friends. *Smolen*, 80 F.3d at 1288. "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight [and] [i]f the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Smolen*, 80 F.3d at 1288. An ALJ's failure to "properly discuss competent lay testimony favorable to the claimant" is not harmless error unless a reviewing court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Here, as an initial matter, this court notes that plaintiff overstates ALJ Hyatt's burden of proof for rejecting the lay opinion of Ms. Balanzen. Plaintiff states that specific and legitimate reasons were needed. As stated above, however, an ALJ may discount the testimony of the lay witnesses by providing reasons that are merely germane to each witness. *Dodrill*, 12 F.3d at 919; *Smolen*, 80 F.3d at 1288. Nevertheless, the record reveals that ALJ Hyatt failed to meet even this lower burden of proof because he provided no explanation for giving Ms. Balanzen's lay statements only "some weight." As such, this court finds that ALJ Hyatt erred by failing to provide a germane reason for discrediting competent lay testimony favorable to plaintiff. *Dodrill*, 12 F.3d at 919; *Smolen*, 80 F.3d at 1288. Moreover, if fully credited, Ms. Balanzen's testimony potentially supports a conclusion that plaintiff's physical impairments affect her ability to lift, bend, stand, reach, walk, and kneel, which a reasonable ALJ could find precludes plaintiff from returning to gainful employment. Accordingly, ALJ Hyatt's error in failing to

9 – OPINION AND ORDER

provide a germane reason for rejecting Ms. Balanzen's lay testimony was not harmless. *Stout*, 454 F.3d at 1056.

Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because that error was not harmless, substantial evidence does not support the Commissioner's decision that plaintiff can perform his previous work.

### III.    Step Four Findings and Hypothetical Question Posed to the VE

Plaintiff argues that ALJ Hyatt erred by finding that she was limited to sedentary exertion while also finding that she could return to her past relevant work in "production" because this was a "composite job" requiring "quality control inspector" duties performed at a sedentary exertional capacity level, as well as "project assembler" duties performed at a light exertional capacity level. *Id.* at 1-2. Plaintiff asserts that because ALJ Hyatt found that she was limited to sedentary work, it was improper for him to also find that she could return to her prior job because the project assembler component of that job requires light exertional duties that exceed her RFC to perform only sedentary work. *Id.*

Plaintiff also asserts that ALJ Hyatt did not ask any hypothetical questions to the VE at the October 8, 2013, hearing and instead chose to rely on the testimony from VE Gary Jesky who testified at ALJ Lazuran's prior hearing on November 5, 2009. Pl.'s Reply Br. 5. Plaintiff argues that because ALJ Lazuran omitted her credible subjective symptom testimony, as well as the testimony of the lay witness from the hypothetical posed to VE Jesky, VE Jesky's testimony has no evidentiary value here and consequently, ALJ Hyatt's decision, which is based in part on this testimony, is not based on substantial evidence. *Id.* at 5-6.

ALJ Lazuran found that plaintiff had the RFC to lift 10 pounds occasionally, stand and walk short distances for 6 hours in an 8 hour workday, and sit without limitation. Tr. 100. ALJ

Hyatt found that plaintiff had the same RFC, but added that plaintiff can perform a "full range" of sedentary work.[1] Tr. 35. VE Jesky testified that someone with plaintiff's RFC, who also required "easy access to a restroom," could perform all aspects of plaintiff's past relevant work. Tr. 81-84. VE Jesky also testified that the quality control inspector aspect of plaintiff's past relevant work would provide skills that could be transferred to other types of quality control work. Tr. 82. VE Jesky, however, did not provide specific occupations in the DOT that those skills would be transferable to or testimony regarding whether jobs existed for that occupation in significant numbers in the national economy.

At step-four, after specifically accepting VE Jesky's testimony that plaintiff's past relevant work does not require the performance of work-related activities precluded by her RFC, ALJ Hyatt found that plaintiff could return to her past relevant work as a projector assembler and quality control inspector as the job is "generally performed" in the national economy. Tr. 37, 83. ALJ Hyatt did not perform a step-five analysis.

The RFC is the maximum a claimant can do despite her limitations. *See* 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant evidence in the case record, including information about the individual's symptoms." SSR 96-

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting . . . jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Here, VE Jesky's testimony was based off of ALJ Lazuran's RFC that did not include the additional limitation to sedentary work included in ALJ Hyatt's RFC. However, both ALJ's RFCs limited plaintiff's ability to lift, stand, and walk to levels consistent with the additional "sedentary" exertional limitation imposed by ALJ Hyatt and plaintiff has not asserted that the omission of this additional sedentary limitation from the hypothetical question posed to VE Jesky constitutes harmful error. *Shinseki*, 556 U.S. at 409. Accordingly, this court finds that any error caused by the exclusion of this additional limitation from the hypothetical question posed to VE Jesky was harmless. *Stout*, 454 F.3d at 1055–56.

11 – OPINION AND ORDER

8p, *available at* 1996 WL 374184. It is "very important" to consider first "whether the individual can still do past relevant work as he or she *actually* performed it because individual jobs within an occupational category as performed for particular employers may not entail all of the requirements of the exertional level indicated for that category in the [DOT]." *Id.* at *4.

The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001)

At step-four, the "claimant has the burden to prove that [s]he cannot perform h[er] prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle*, 533 F.3d at 1166 (quoting *Lewis v. Barnhart,* 281 F.3d 1081, 1083 (9th Cir.2002)). "[C]omposite jobs have significant elements of two or more occupations and, as such have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." Social Security Ruling (SSR) 82-61, *available at* 1982 WL 31387, at *2. It is improper for an ALJ to find that a claimant is able to return to only the least demanding aspect of her prior job. *Valencia v. Heckler*, 751 F.2d 1082, 1087 (9th Cir. 1985). However, a claimant's "own testimony" regarding the actual exertional requirements of her past relevant work is "highly probative." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

Once plaintiff has met her burden at step-four, "the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

12 – OPINION AND ORDER

Here, plaintiff's past relevant work is a composite job consisting of two DOT occupations requiring light and sedentary work. When asked by ALJ Hyatt at the October 8, 2013, hearing if he would "agree that [plaintiff's] past relevant work is in the sedentary range" plaintiff's attorney replied "yes, I would agree." Tr. 89. Moreover, ALJ Hyatt adopted the finding of VE Jesky that someone with plaintiff's RFC, who also required easy access to a restroom, could perform all aspects of plaintiff's past relevant work.

However, because the statements of Ms. Balanzen were improperly discredited by ALJ Hyatt, all limitations imposed by plaintiff's impairments and all information about her individual symptoms were not properly included in the RFC. As such, the RFC and, by extension, the dispositive hypothetical question posed to VE Jesky, were not supported by substantial evidence. Accordingly, although plaintiff's attorney's statements regarding the actual exertional requirements of her past relevant work are highly probative to the issue of whether her job was actually performed at a sedentary exertional capacity, because plaintiff's RFC was not supported by substantial evidence, it is not clear on the record before the court whether plaintiff could perform even sedentary work.

Finally, although ALJ Hyatt adopted VE Jesky's testimony that plaintiff could perform her past relevant employment as she actually performed it, he found in his written decision that plaintiff could perform her past relevant work as it is "generally performed" in the national economy. Because the projector assembler portion of the job as generally performed requires light exertional capacity, which exceeds the sedentary limitation he endorsed in his RFC, and because he provided no further explanation for how plaintiff would have the capacity to do her past relevant work on the basis of a generic DOT classification, this court finds that ALJ Hyatt errored by finding that plaintiff could return to her past relevant work as a quality control

13 – OPINION AND ORDER

inspector and project assembler as these jobs are performed "generally" in the national economy. *Valencia*, 751 F.2d at 1087; see also *Pinto*, 249 F.3d at 846 (quoting SSR 82-61) ("'Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable.'"). Accordingly, this court finds that ALJ Hyatt's step-four finding is not supported by substantial evidence.

## IV.    Remand

The final question is whether the case should be remanded for further proceedings or an award of benefits.

Plaintiff argues that although VE Jesky testified that she would have skills that are transferable from her past semi-skilled work, because he failed to specify what those transferrable skills were and what occupations whey would be transferable to, this court should find her disabled based on her age, education level, and lack of identifiable transferable skills under the "grids" at 20 C.F.R. § 404, Subpart P, Appendix 2, 201.00(c)-(f).

"If the court finds [legal] error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved." *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted). During its review the "district court must consider whether there are inconsistencies between [the claimant's] testimony and the medical evidence in the record," or whether evidence exists that "casts into serious doubt the claimant's claim to be disabled." *Id.* The court may not remand for an award of benefits unless it concludes that "further administrative proceedings would serve no useful purpose." *Id.*

Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or

14 – OPINION AND ORDER

explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407. The court must evaluate the testimony the ALJ improperly rejected, "in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true." *Id.* If so, the Court "may exercise its discretion to remand the case for an award of benefits." *Id.*

In this case, ALJ Hyatt failed to provide legally sufficient reasons for rejecting Ms. Balanzen's lay testimony. However, as stated above, Ms. Balanzen answered many questions on her report by writing "I don't know," "not sure," or "I don't live with her" and she also stated that she did not know how each of plaintiff's alleged impairments affected her functional abilities. Thus, although Ms. Balanzen's testimony potentially supports a conclusion that plaintiff's physical impairments affect her ability to lift, bend, stand, reach, walk, and kneel, which a reasonable ALJ could find precludes plaintiff from returning to gainful employment, it is not clear from this evidence that an ALJ would be required to find plaintiff disabled were such evidence credited.

Moreover, VE Jesky opined that plaintiff had gained transferrable skills from the "quality control inspector" component of her past relevant job, which is the portion of plaintiff's job that required only sedentary exertional duties. Because Ms. Balanzen's lay testimony regarding plaintiff's current abilities would have no bearing on VE Jesky's opinion of what skills plaintiff had learned in the past, and because plaintiff's attorney stated at the 2013 hearing that her past

15 – OPINION AND ORDER

relevant work only required sedentary exertional duties, this court finds that evidence exists that casts into serious doubt the claimant's claim to be disabled and, therefore, cannot conclude that further administrative proceedings would serve no useful purpose. As such the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

Upon remand, the ALJ shall discuss the lay testimony of Ms. Balanzen, develop a new RFC, obtain additional VE testimony, and determine plaintiff's ability to perform her past relevant work, or in the alternative, to use any transferrable skills she may have gained in her past relevant work to find other work that exists in significant numbers in the national economy.

## CONCLUSION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Commissioner is REVERSED and this case is REMANDED for further administrative proceedings consistent with this opinion. Upon remand, the ALJ shall discuss the lay testimony of Ms. Balanzen, develop a new RFC, obtain additional VE testimony, and determine plaintiff's ability to perform her past relevant work, or in the alternative, to use any transferrable skills she may have gained in her past relevant work to find other work that exists in significant numbers in the national economy.

IT IS SO ORDERED.

DATED this 19 day of September 2016.

THOMAS M. COFFIN
United States Magistrate Judge

16 – OPINION AND ORDER